UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Case # 17-CR-248-FPG

v.

DECISION AND ORDER

GARY L. HANNOLD, II,

                Defendant.

## INTRODUCTION

On December 27, 2017, the Grand Jury returned an indictment charging Defendant Gary L. Hannold, II, with seven counts of possessing various controlled substances with intent to distribute them. ECF No. 11.

Defendant filed a motion to suppress evidence on February 23, 2018. ECF No. 15. After holding a hearing and allowing post-hearing briefing, United States Magistrate Judge H. Kenneth Schroeder, Jr., issued a report and recommendation (R&R) on February 26, 2019. ECF No. 41. Judge Schroeder recommends that the Court deny Defendant's motion to suppress. *Id.* Currently before the Court are Defendant's objections to the R&R and the Government's response. ECF Nos. 42-43. For the following reasons, Judge Schroeder's R&R is ADOPTED IN PART and REJECTED IN PART, and Defendant's motion to suppress is GRANTED IN PART and DENIED IN PART.

## LEGAL STANDARD

A district court reviews those portions of an R&R to which a party has timely objected *de novo*. Fed. R. Crim. P. 59(b)(3). When a party does not object to a portion of an R&R, or when

the objections are conclusory, general, or without legal support, a district court reviews those portions for clear error. *See United States v. Preston*, 635 F. Supp. 2d 267, 269 (W.D.N.Y. 2009) (citing *Cullen v. United States*, 194 F.3d 401, 405-07 (2d Cir. 1999)); *see also* Fed. R. Crim. P. 59(b)(2); Loc. R. Crim. P. 59(c)(2) ("Written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority.").

After reviewing the R&R and the objections thereto, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Fed. R. Crim. P. 59(b)(3). A district court will ordinarily accept the credibility findings of a magistrate judge when he holds an evidentiary hearing and makes credibility findings. *United States v. Lawson*, 961 F. Supp. 2d 496, 500 (W.D.N.Y. 2013) (citing *Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008)). A district judge should not reject the credibility findings of a magistrate judge without holding his own evidentiary hearing. *Carrion*, 549 F.3d at 588.

## BACKGROUND

**I.     Automobile Stop**

At approximately 4:00 a.m. on March 23, 2017, Chautauqua County Sheriff Deputy Chad Wright was patrolling Whallon Road in the Town of Chautauqua when he happened upon a grey truck and dark green Chevrolet Camaro parked on the north side of the road. Both were empty. Wright recognized the truck as one used by Jason Goodwill, who Wright had previously arrested for narcotics possession. The owners of both vehicles lived approximately ten miles from Whallon Road.

Across the road from the vehicles was a large, dark, wooded lot with which Wright was familiar. Based on prior investigation, Wright knew that neither vehicle belonged to the lot's owner.

Wright looked toward the wooded area and saw bright, white lights moving around. He interpreted these to be lights emitted from cell phones held by multiple individuals.

Wright wanted to investigate further, so he parked his patrol car on Whallon Road and called for backup. After Wright had parked, the Camaro left its spot and drove toward him. He engaged his car's emergency lights and indicated to the driver—the Defendant—that he should pull the car over. Defendant did so.

Wright questioned Defendant about his activity in the wooded lot, and Defendant said his friend was showing it to him. Based on this response, which Wright concluded was suspicious, he asked Defendant to exit the vehicle. As he was doing so, Wright noticed an object that he thought was a flashlight with a stun-gun function under the driver's seat. Wright asked Defendant what it was. Defendant reached for the object, received an electric shock, and fell to the ground.

Wright arrested Defendant based on his possession of the stun gun. He and Deputy David Kapuscinski, who had arrived on the scene around the time of Defendant's arrest, searched Defendant's car. They found a canvas bag with a smell of unburned marijuana emanating from it. They searched the bag and the rest of the car and discovered marijuana, methamphetamine, and cocaine base, among other controlled substances and drug paraphernalia.

## II.    Backpack Seizure

Nearly five months later, on August 11, 2017, Kapuscinski was parked on Park Street in the Village of Sherman at approximately 1:30 a.m. He observed a motorcycle driving toward him with a dim headlight and a loud muffler. Suspecting the driver was violating New York's Vehicle

and Traffic Law, Kapuscinski pulled out and engaged his emergency lights, signaling to the driver of the motorcycle that he should pull over. He did so almost immediately, stopping a few feet into the driveway of 192 Park Street, a location known for narcotics activity. Kapuscinski pulled in behind him. As he was exiting his car, the driver of the motorcycle took off his helmet and the backpack he was carrying and tossed them a few feet to the side into a patch of tall grass. Kapuscinski interpreted this act as an attempt to hide the backpack from him.

After the driver took his helmet off, Kapuscinski recognized him as the Defendant from the March 2017 automobile stop. Kapuscinski asked the Defendant for his license and registration and why he threw the backpack into the tall grass. Kapuscinski then reviewed Defendant's license and determined he had committed a traffic violation.

Kapuscinski again asked Defendant why he tried to hide the backpack and whether the backpack was his. Defendant repeatedly denied that he owned the backpack, positioned himself between Kapuscinski and the backpack, and repeatedly changed his story about from where he was coming.

Kapuscinski contacted his supervisor and they concluded that he could lawfully search the backpack based on the Defendant attempting to hide the backpack, his changing story, his prior arrest, and the narcotics activity in the area.

Kapuscinski thus approached the backpack with the intent to search it. As he did so, Defendant attempted to grab the backpack from Kapuscinski. Kapuscinski handcuffed Defendant and put him into his patrol car. Thereafter, another individual exited the house, claimed the backpack belonged to him, and went back into the house.

Kapuscinski retrieved the backpack. After he picked it up, he smelled an odor of marijuana. He searched the backpack and found, among other controlled substances and drug paraphernalia, marijuana and methamphetamine.

**DISCUSSION**

Defendant challenges the bases for Wright stopping the Camaro in March 2017 and Kapuscinski seizing and searching the backpack in August 2017. Defendant does not challenge Judge Schroeder's conclusions that Wright lawfully questioned Defendant after stopping the Camaro in March 2017, asked him to exit the vehicle, arrested him for possession of the stun gun, seized it, conducted a warrantless search of the vehicle, and searched the canvas bag; and that Kapuscinski lawfully stopped Defendant in August 2017 and questioned him. The Court has reviewed these conclusions for clear error, finds none, and, thus, accepts and adopts them.

**I.  Automobile Stop**

The Fourth Amendment establishes "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In *Terry v. Ohio*, the Supreme Court found that a police officer does not violate the Fourth Amendment if he temporarily detains someone provided he has "a reasonable basis to think that the person to be detained 'is committing or has committed a criminal offense.'" *United States v. Bailey*, 743 F.3d 322, 331-32 (2d Cir. 2014) (quoting *Arizona v. Johnson*, 555 U.S. 323, 326 (2009)).

A reasonable basis "demands specific and articulable facts which, taken together with rational inferences from those facts, provide detaining officers with a particularized and objective basis for suspecting wrongdoing." *Id.* at 332 (citations and quotation marks omitted). The standard is "not high," but it "requires more than a hunch." *Id.* (quotation marks omitted). Finally, "while

a reviewing court cannot merely defer to police officers' judgment in assessing reasonable suspicion, the court must view the totality of the circumstances 'through the eyes of a reasonable and cautious police officer on the scene.'" *Id.* (quoting *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000)).

Defendant argues that the fruits of the Camaro search in March 2017 should be suppressed because Wright's reasons for stopping the Camaro—its association with Jason Goodwill, a known drug dealer, and the time of night—were insufficient to constitute reasonable suspicion. ECF No. 42 at 4-7.

The Court is not persuaded. First, while either reason is insufficient to establish reasonable suspicion in isolation, the Court is required to consider all circumstances of the stop together. *Bailey*, 743 F.3d at 332.

Second, Wright gave other specific, articulable facts in support of the stop: the owners of both vehicles lived more than ten miles from the wooded lot, neither vehicle belonged to the owner of the lot, and multiple individuals were walking through the lot with light emitting from their cell phones. Those facts, combined with the possible presence of a known drug dealer and the time of night, establish reasonable suspicion for Wright to stop the Camaro and investigate further.

## II.  Backpack Seizure

After Judge Schroeder's suppression hearing on September 12, 2018, the Government and Defendant submitted post-hearing memoranda. In its memorandum, the Government made three arguments. First, it argued that Kapuscinski legally stopped Defendant. ECF No. 35 at 14. Defendant did not challenge that argument. Second, it argued that Defendant did not have standing to challenge the seizure and search of the backpack since he repeatedly disclaimed ownership of it and another individual claimed he owned it. *Id.* at 15-18. Finally, it argued that, if the Court

finds Defendant had standing to challenge the seizure and search, both were legal because Defendant abandoned the backpack, relinquishing his expectation of privacy in it and the attendant Fourth Amendment protections. *Id.* at 18-20.

In his R&R, Judge Schroeder did not address these arguments. Instead, he concluded (1) that Kapuscinski established reasonable suspicion to question Defendant after the stop, and (2) Kapuscinski legally seized the backpack because it was in plain view. ECF No. 41 at 19-20. Once Defendant grabbed for the backpack and, a short time later, smelled marijuana, he legally searched it and found various controlled substances. *Id.* at 20-21.

Defendant objects to the R&R by arguing that the seizure of the backpack was unlawful, rendering the search unlawful. [1] ECF No. 42 at 8-11. In response, the Government argues only that Judge Schroeder's conclusion as to the seizure was correct. ECF No. 43 at 5.

### A. Standing

Because Defendant properly objected to Judge Schroeder's analysis on the backpack seizure, the Court reviews that portion of the R&R *de novo*. The Court's review begins with Defendant's standing to challenge the seizure.

Generally, a defendant has standing to challenge a seizure or search by the Government where he (a) "had an expectation of privacy that society is prepared to recognize as reasonable, and (b) . . . conducted himself and dealt with the property in a way that indicated a subjective expectation of privacy." *United States v. Perea*, 986 F.2d 633, 639 (2d Cir. 1993).

Importantly, a person "need not be the owner of the property for his privacy interest to be one that the Fourth Amendment protects, so long as he has the right to exclude others from dealing with the property." *Id.* at 639-40. Consequently, a person who possesses property "belonging to

---

[1] Defendant does not argue that the search was unlawful independent of the seizure.

another and who has the right to exclude third persons from possession of that property has an interest that is likewise protected." *Id.* at 640.

An example of the latter is a bailee. *Id.* A bailee is defined as "[s]omeone who receives personal property from another, and has possession of but not title to the property." *Bailee*, Black's Law Dictionary (10th ed. 2014). "[I]n the Fourth Amendment context, bailees can have a sufficient interest in bailed property to give them standing to object to its seizure or search." *Perea*, 986 F.2d at 640.

Defendant's argument for standing is based on that conclusion. In his post-hearing memorandum, he argued that a friend gave him the backpack and he repeatedly asserted an expectation of privacy in it. ECF No. 36 at 20-21.

The Government countered with two arguments. First, Defendant's acts—removing the backpack, tossing it aside, repeatedly denying ownership of it—do not evince an expectation of privacy. ECF No. 35 at 16. Second, Defendant's status as a bailee, if it existed, ceased when the purported owner of the backpack appeared at the scene. *Id.* at 16-17.

The Court disagrees. First, the acts the Government highlighted do not paint a full picture of Defendant's behavior. While he did remove the backpack, toss it aside, and deny ownership of it, he also repeatedly denied consent to seize or search the backpack, grabbed at it when Kapuscinski seized it, and, according to Kapuscinski, stood in a protective manner between Kapuscinski and the backpack.

Second, Defendant's statements or acts indicating he did not own the backpack are of no moment. Ownership is not the only basis on which to assert Fourth Amendment protection; bailee status, which does not confer ownership rights, is also sufficient. *Perea*, 986 F.2d at 639-40. And,

more importantly, Defendant had the right to exclude others from possessing the property and he repeatedly asserted that right as to Kapuscinski.

Finally, Defendant's status as bailee did not cease[2] before the seizure. As the Government itself points out, the backpack's purported owner did not appear on the scene until *after* Kapuscinski seized the backpack, Defendant attempted to grab it, and Kapuscinski detained Defendant in his patrol car. ECF No. 35 at 17. Therefore, Defendant could not have delivered the backpack to its purported owner before the seizure.

Since Defendant has standing, the Court now considers the Government's two arguments that the seizure was lawful: (1) Defendant abandoned the backpack and (2) Judge Schroeder's conclusion that Kapuscinski properly seized the backpack under the plain view doctrine was correct.

**B.      Abandonment**

A person forfeits Fourth Amendment protections in property when he voluntarily abandons it. *United States v. Lee*, 916 F.2d 814, 818 (2d Cir. 1990). To conclude whether a person abandons property, courts must consider the intent of the alleged abandoner based on his words, acts, and other objective facts. *Id.*

The Government argues that Defendant abandoned the backpack by tossing it aside and disclaiming ownership of it. ECF No. 35 at 19. This argument mirrors that used by the Government against Defendant's standing. It likewise fails for similar reasons.

The toss and repeated ownership disclaimers do show an intent to abandon the backpack. But the toss is not as significant as the Government construes it. Kapuscinski testified that the backpack was a mere five feet from Defendant after he threw it on the ground. That distance is

---

[2] The Court assumes, *arguendo*, that a defendant's status as a bailee ceases when he delivers the bailment to the bailor.

consistent with Defendant placing the backpack on the ground for any number of reasons. It does not equate with, say, a bag found twenty feet from a stopped vehicle, *United States v. Alvarez*, 412 F. App'x 593, 596 (4th Cir. 2011), or a bag thrown over a fence and left defenseless. *United States v. Curran*, 638 F. App'x 149, 154 (3d Cir. 2016).

As for the repeated disclaimers, they can be sufficient to constitute abandonment. *United States v. Welbeck*, 145 F.3d 493, 498 (2d Cir. 1998) (finding defendant abandoned a bag when he "repeatedly and expressly" disclaimed ownership of it). But a finding of abandonment is not based on a defendant's words alone; it is based on his intent, which may be derived from words, acts and other objective facts. *Lee*, 916 F.2d at 818.

Considering the totality of the Defendant's words and acts and the surrounding circumstances, the Court finds that Defendant did not intend to abandon the backpack. Defendant repeatedly attempted to protect the backpack and its contents: he positioned himself between Kapuscinski and the backpack, declined consent to search it, grabbed at it when Kapuscinski seized it, and remained near it for the entirety of the encounter pre-detention. The disclaimers show an intent to abandon on their face, but Defendant's acts reveal his true intent.

**C.     Plain View**

The plain view doctrine "provides grounds for seizure of an item when an officer's access to an object has some prior justification under the Fourth Amendment." *Texas v. Brown*, 460 U.S. 730, 738 (1983). Consequently, it is better understood not as an exception to the Fourth Amendment's warrant requirement, but permission to seize an object with an apparent criminal character after acquiring lawful access to the property in which the object resides. *Id.*; *G & G Jewelry, Inc. v. City of Oakland*, 989 F.2d 1093, 1101 (9th Cir. 1993).

Here, the criminal nature of the backpack was not readily apparent. Kapuscinski suspected that the backpack contained contraband, a hunch that proved correct. But he did not observe a suspicious bulge or an obviously-criminal object in or protruding from the backpack. He therefore could not lawfully seize the backpack under the plain view doctrine.

Because the Government provides no other justification for the seizure, *United States v. Iverson*, 897 F.3d 450, 458 (2d Cir. 2018) ("If a defendant has shown that he had a reasonable expectation of privacy in the place or object in question, the government has the burden of showing that the entry, search, or seizure was lawful because it fell within one of the exceptions to the warrant requirement."), all evidence seized on August 11, 2017, is suppressed. *United States v. McCargo*, 464 F.3d 192, 196 (2d Cir. 2006) ("Evidence seized pursuant to an unreasonable search or seizure or evidence that is the 'fruit' of an unreasonable search or seizure must be suppressed and cannot be used in the prosecution's case in chief.").

## CONCLUSION

For the foregoing reasons, Judge Schroeder's R&R, ECF No. 41, is ADOPTED IN PART and REJECTED IN PART. The Court ADOPTS Judge Schroeder's conclusions that Wright lawfully stopped the Camaro in March 2017, questioned Defendant, asked him to exit the vehicle, arrested him for possession of the stun gun, seized it, conducted a warrantless search of the vehicle, and searched the canvas bag; and that Kapuscinski lawfully stopped Defendant in August 2017 and questioned him. The Court REJECTS Judge Schroeder's conclusions that Kapuscinski lawfully seized the backpack in August 2017 and searched it.

Consequently, Defendant's motion to suppress, ECF No. 11, is GRANTED IN PART and DENIED IN PART. The Court finds that Kapuscinski unlawfully seized the backpack in August

2017 and, therefore, the subsequent search of it and seizure of evidence within it was unlawful. All evidence derived from that search and seizure is suppressed.

Wright's stop of the Camaro in March 2017, however, was lawful. All evidence seized from that encounter is not suppressed and may be used by the Government at trial.

IT IS SO ORDERED.

Dated: April 19, 2019
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court